494 A.2d 402

COMMONWEALTH of Pennsylvania

v.

David MALDONADO, Appellant.

COMMONWEALTH of Pennsylvania

v.

Samuel MALDONADO, Appellant.

Superior Court of Pennsylvania.

Argued May 22, 1984.

Filed May 3, 1985.

Reargument Denied June 28, 1985.

Petition for Allowance of Appeal Denied Dec. 10, 1985.

Daniel H. Green, Philadelphia, for appellant (at 206).

Leonard Zack, Philadelphia, for appellant (at 492).

Sandra Adler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

MONTEMURO, Judge:

This is a consolidated appeal from the judgments of sentence. The appellants, David and Samuel Maldonado, are brothers.

Appellants were tried before the Honorable Charles L. Durham of the Court of Common Pleas of Philadelphia sitting without a jury.

Each appellant was found guilty of second degree murder,[1] criminal conspiracy,[2] robbery,[3] and possession of instrument of crime.[4]

Following the denial of post-trial motions, each appellant received the same sentence, namely, life imprisonment for second degree murder and a concurrent sentence of five to ten (5–10) years for criminal conspiracy.[5]

Both appellants say that the trial court erred (a) in refusing a request for a view of the crime area, and (b) in refusing to order a mistrial when it was clear that the prosecution had violated the court's order of sequestration of witnesses. We are convinced from our own independent review of the entire record of each appellant, including the

1. 18 Pa.C.S. § 2502(b).
2. *Id.* § 903.
3. *Id.* § 3701.
4. *Id.* § 907.
5. The trial court properly found that for purposes of sentencing, the robbery conviction merged with the conviction for second degree murder. The court suspended sentence on the conviction of possession of instruments of crime.

briefs of counsel, that these claims are completely without merit. The trial judge had adequately addressed these issues and properly dismissed them.

Appellant, David Maldonado, also argues in this appeal that Section 3701, Subsection (a)(2) of the Pennsylvania Crimes Code should be struck down as unconstitutional because of vagueness. However, since this claim of error was never raised in appellant David Maldonado's post-verdict motions, it is waived and will not be considered. *Commonwealth v. Manigault*, 501 Pa. 506, 509, 462 A.2d 239, 240–41 (1983). *Commonwealth v. Gravely*, 486 Pa. 194, 198–99, 404 A.2d 1296, 1297–98 (1979).

Both appellants, albeit for different reasons, assert that the evidence was insufficient to prove beyond a reasonable doubt that appellant had committed a robbery and a theft; hence, a conviction of second degree murder under the felony-murder rule was improper.[6]

6. We note that appellant David Maldonado's post-verdict motion in arrest of judgment alleges that "the lower court's verdict was improper in that it was based on a complete misunderstanding of Section 3701, Subsection (2), of the Pennsylvania Crimes Code." (Appellant David Maldonado's Brief at p. 13). Because we find that the trial court did not misunderstand the law, we could summarily dismiss this claim; instead, since appellant has raised the issue under a post-verdict motion in arrest of judgment and, although somewhat circuitously, appears to be arguing in his brief a claim of insufficiency, we shall treat this claim as though appellant David Maldonado is asserting that the evidence was insufficient to sustain a verdict of guilty as to second degree murder arising out of a killing in the perpetration of a felony. "The proper procedure to challenge the sufficiency of the evidence is by a post-verdict motion in arrest of judgment. *See* 19 P.S. § 871, repealed by Act of April 28, 1978, P.L. 202 No. 53, § 2(a), Pa.R.Crim.P. 1124 effective July 1, 1983. Order of January 28, 1983, No. 112, Crim[inal] Pros[ecution] Rules Docket No. 2. If the defendant only wishes to challenge the weight of the evidence, the proper procedure is by a post-verdict motion for a new trial." *Commonwealth v. Holmes*, 315 Pa.Super. 256, 260, 461 A.2d 1268, 1270 (1983).

Although we are unable to perceive from the record whether appellant, Samuel Maldonado's post-verdict motions are for a new trial or in arrest of judgment, we are satisfied from the content of his written motions, his arguments before the trial court and his appellate brief, that his challenge to the judgment of sentence for second degree murder (felony-murder) is also predicated on an insufficiency of evidence claim.

Appellant David Maldonado also argues that the evidence was insufficient to support a finding of guilty as to the crimes of criminal conspiracy and possession of instrument of crime.

■ In reviewing a motion in arrest of judgment, whether the finder of fact is a jury or a judge sitting without a jury, "the sufficiency of the evidence must be evaluated upon the *entire trial record.* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. See, *Commonwealth v. Moore,* 398 Pa. 198, 157 A.2d 65, 93 A.L.R.2d 616 (1959), and *Commonwealth v. Wright,* 383 Pa. 532, 119 A.2d 492 (1956). Also, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings therein were right or wrong." *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965) (emphasis in original); *accord; Commonwealth v. Winebrenner,* 439 Pa. 73, 77–78, 265 A.2d 108, 111, (1970); *Commonwealth v. Parker,* 305 Pa.Super. 516, 524, 451 A.2d 767, 770–71 (1982).

"In testing the sufficiency of the Commonwealth's evidence, we proceed in several steps. First, we accept as true all the evidence upon which the finder of fact could properly have reached its verdict. Next we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. This inquiry is bounded by two poles. On the one hand, the Commonwealth does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence. On the other hand, guilt must be proved; mere conjecture or surmise is not sufficient." *Commonwealth v. Herman,* 271 Pa.Super. 145, 148–49, 412 A.2d 617, 619 (1979).

■ Considered in the light of the above mentioned standards, tests and principles, the salient facts are as follows:

On August 13, 1980, on a warm summer afternoon, Anthony Gustaitis (Anthony),[7] his sister Mari, David Lightey and Patty Garwood went to the Devil's Pool area of Valley Green Park in the City of Philadelphia for a picnic. During the course of the afternoon they met Steven Monahan (the decedent),[8] his sister Noreen, Sophia Hartell and her boyfriend, Mark Miller. These two groups of young people, previously unacquainted, socialized for several hours. At approximately 6:00 p.m., the appellants David and Samuel Maldonado, Jesus Lisojo (Jesus), and Elvin Maldonado (Elvin), all young hispanic males,[9] arrived on the scene and were invited to join the others. For some hours, until approximately 8:00 p.m., these young people entertained themselves by swimming, drinking beer, smoking "joints" and singing while Mark Miller played the guitar.

At about 8:30 p.m., David Lightey, Noreen, Mari and Patty had left the scene to get more beer and cigarettes. Elvin, apparently in the course of maneuvering over the rocks to get to the swimming hole, sprained his ankle and returned to his car which was parked in the parking lot adjacent to the Canoe House located near the picnic area. He was assisted by Jesus and the appellants, Samuel and David. While at the car, Elvin heard Jesus and the appellants say they were going to take the "white kids' box." Elvin saw that they were each armed with a steak knife which he heard them say they had already stolen from the box. Elvin fell asleep in his car while Jesus and the appellants returned to the picnic area.

Anthony, who had remained at the picnic area with the decedent, Mark Miller and Sophia, testified that suddenly, appellant Samuel Maldonado seized the box containing items belonging to Anthony's group and began to run away,

7. Anthony was not yet 17 years of age.
8. Steven was 19 years of age.
9. Samuel was 18 years of age; David was 28. Elvin Maldonado was not related to either Samuel or David Maldonado.

followed by appellant David Maldonado and Jesus. After about ten seconds, Anthony gave chase. At first, the decedent just sat there, but then after several moments, he joined Anthony in the chase.

Moments later Anthony saw appellant Samuel Maldonado sitting on a log and going through the box. The log was about 60 feet from the picnic scene. When Anthony caught up with Samuel, he grabbed him by the shirt but his brother, appellant David Maldonado, pushed him off, knocking him to the ground. Anthony said that when he grabbed Samuel by the shirt, at that time or just prior thereto, he saw Samuel discard the box. He ws not sure where this took place and that Samuel didn't throw the box but "like kept it." From the record, while it is not clear whether the decedent saw the box being discarded, the evidence seems to indicate that the box had already been discarded when he caught up to Anthony at the log. (N.T. at 62, 65, 66) As soon as appellant David Maldonado had pushed Anthony off, they continued to flee the scene.

Anthony and the decedent took up their pursuit and Anthony said that at no time during the chase did he ever speak to the decedent. They pursued appellants along a track which led to the parking lot. The Canoe Club is located adjacent to the parking lot and when they arrived there, they went in different directions, the decedent going behind the Canoe Club [10] building and Anthony going along the path of the driveway to the parking lot.

Anthony had lost sight of the appellants and the decedent, and, when he arrived at the parking lot, which was twenty seconds after he left decedent, he observed Jesus letting the air out of the tires of the decedent's automobile, apparently to prevent pursuit. Although Anthony recognized Jesus, apparently believing at that point in time that discretion was the better part of valor, he merely inquired if Jesus had seen the appellants. Jesus said he thought he saw appellant David Maldonado running from the bushes

---

**10.** The Canoe Club building is approximately 750 feet from the picnic area known as Devil's Pool.

about 50 feet off the road. Anthony's search of the area was unrewarding and so he returned to the picnic area to see if he could find the decedent. When he could not find him there, he returned to the parking lot. After about two minutes, he was joined by his sister, Mari, David Lightey, and decedent's sister, Noreen Monahan. Mark Miller and Sophia Hartell had already arrived at the parking lot while Anthony had gone back to the picnic site. Together, they all set out to search for the decedent. Anthony went down to the Canoe Club and found the decedent near the Canoe Club building. He was unconscious and lying on his back. Anthony yelled for the others to join him. While waiting for the police to arrive, they noticed a pool of blood coming from the bottom of the decedent's back. He had been stabbed twice in the back.

Elvin, who had fallen asleep in the car, testified that he was awakened by Jesus and was told by him that fighting was taking place. He then saw Jesus let the air out of the decedent's automobile tires. As several white youths approached them, Elvin said they drove away. As they were leaving the area, they saw appellants on the road and picked them up. While seated in the car, Elvin heard appellant David Maldonado say, "I think I killed him" and he, appellant David Maldonado, started to cry. He observed appellant, Samuel Maldonado, throw a knife out of the car window as they drove to see Lucy Lisojo.

Lucy Lisojo, the sister of Jesus,[11] testified that at about 10:00 p.m. that evening, appellants, David and Samuel Maldonado, Elvin and Jesus, arrived at her sister's home in Philadelphia. Appellants told her what had happened. Appellant David Maldonado told her that he had said, "Let's steal the knife first and then I will take the box," believing there may have been money in the box. Appellant David Maldonado explained that his brother, Samuel took the knife from the table in the picnic area before taking the box. Appellant David Maldonado told Lucy that he had

11. Jesus Lisojo, at the time of trial and apparently still, is a fugitive from justice.

given his brother, Samuel, a knife and that he stabbed decedent to death with a second knife taken from his sock when he saw decedent beating his brother, Samuel. Appellants told her that Samuel was being punched by decedent. Lucy testified that no one ever said that appellant Samuel Maldonado was being stabbed or that the decedent had a knife. She also testified that appellant David Maldonado stated that he cut his leg when he fell on a piece of tree and he never told her that he had been stabbed by the decedent. She also testified that appellant, David Maldonado, at a later date, asked her for $100.00 to enable him to leave Philadelphia because he had killed a boy. In her presence, appellant David Maldonado had threatened to kill Jesus if Jesus "went over to the side of the white people."

Shortly after the incident, appellant Samuel Maldonado and his mother went to Florida, and appellant David Maldonado fled to the State of Washington.

The trial testimony revealed that the decedent was taken to Chestnut Hill Hospital where he was pronounced dead. An autopsy performed the following day by the medical examiner's office, established that decedent had received two stab wounds to the back, one of which penetrated the body 3½ inches, severing the aorta and causing death. A search of the area where the body was found yielded a bloodstained 5 inch knife used to kill decedent.

The box which appellant Samuel Maldonado had stolen was found emptied of its contents approximately 30 feet from the picnic area. The contents, a report card, a ten dollar ($10.00) bill, one brown wooden handled steak knife, one pink comb, one pink brush, one red towel and one black sock were found in the grass and dirt in the Devil's Pool area north of the Canoe Club.[12]

12. Appellant David Maldonado testified, on the contrary, that decedent or his friend had stolen their radio, that they were simply trying to recover their radio and appellant David Maldonado stabbed decedent in self-defense because he believed decedent was about to fatally wound his brother with a knife. The trial court, obviously, gave no credence to this testimony. The knife allegedly possessed by the

The crime of criminal conspiracy is defined and set forth in 18 Pa.C.S. § 903. It reads in pertinent part as follows:

*Criminal Conspiracy*

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in planning or commission of such crime or of an attempt or solicitation to commit such crime.

The crime of possession of instrument of crime is defined and set forth in 18 Pa.C.S. § 907. It reads in pertinent part as follows:

*Possessing instruments of crime*

(a) Criminal instruments generally.—A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

(b) Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection.

"Instrument of crime."

(1) Anything specially made or specially adopted for criminal use; or

(2) Anything commonly used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

decedent was never found in the police search, but the murder weapon was.

"Weapon." Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon. 1972, Dec. 6, P.L. 1482, No. 334 § 1, effective June 6, 1973.

With regard to both appellants' claims of insufficient evidence to find them guilty beyond a reasonable doubt of the crimes of criminal conspiracy and possession of instrument of crime, we find that the evidence was more than sufficient to sustain these verdicts. Therefore, these claims are dismissed as being without merit.

The only claim remaining which merits discussion, is appellants' assertion that the evidence was insufficient to prove, beyond a reasonable doubt, that appellants had committed a robbery and a theft, and, therefore, a conviction of second degree murder under the felony-murder rule was improper.

A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S. § 2502(b).

Perpetration of a felony is defined as: "The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery...." 18 Pa. C.S. § 2502(d).

The felony of robbery is defined in pertinent part as follows:

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

\* \* \* \* \* \*

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury ...

\* \* \* \* \* \*

(2) An act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S. § 3701.

Appellant David Maldonado argues that, even conceding the Commonwealth's evidence, all that the Commonwealth ever proved was a theft—not a robbery. Appellant David Maldonado would have us rule that once appellant Samuel Maldonado discarded the box, the theft was over and at that point, Anthony Gustaitis and the decedent, Steve Monahan, were obliged to pick up the box and go on with their picniking and, further, since they didn't, decedent has no one to blame but himself for never being able to celebrate his twentieth birthday. Further, appellant David Maldonado argued that he acted in self defense when he stabbed decedent to save his brother.

Appellant Samuel Maldonado argues that a theft never occurred but even if a theft did occur, he never participated in a robbery. He further argues that the use of deadly force was not a foreseeable part of the conspiracy.

Unfortunately for appellants, they are able to buttress their arguments by reliance on facts which were discredited by the trial judge.[13] More importantly, appellants' argu-

13. Appellant, David Maldonado, in what he has captioned a "Special Memorandum to the Judges of the Supreme Court," correctly quotes the trial judge as having said, " '... I would not feel terrible if they (meaning the Judges of the Supreme Court) reverse my verdict ...' " However, it is clear from the trial judge's ruling on post-verdict motions and his well written Opinion that his problem was not with the law but rather with the mandatory life sentence for a conviction of second degree murder. The trial judge also said, just before the aforementioned quote: "I want the appeals court to know the only reason that I am sentencing you to a mandatory sentence, on the record, of life is because of a statute, otherwise I don't think this case warrants a life sentence." Both quotations appear in the Notes of Testimony of the Sentencing Hearing at page 54.

ments totally ignore one standard of review which we have set forth *supra* at p. 158.

Prior to the enactment of the 1972 Crimes Code, our statutes did not define the crime of robbery. Rather, we defined it by its common-law definition:

[Robbery] is the felonious and forcible taking from the person of another of goods or money to any value by violence or putting in fear. Penal Code of 1939, Act of June 24, 1939, P.L. 872, § 704, 705, formerly 18 P.S. § 4707, § 4705 and Act of March 31, 1860, P.L. 382, § 102.

The 1972 Crimes Code significantly changed the old robbery statute. In its place, the legislature adopted almost verbatim the language of § 222.1 of the Model Penal Code. *10 Uniform Laws Annotated, Master Edition.* The 1972 Crimes Code used the language of the Model Penal Code in defining robbery as a taking "in the course of committing a theft" if the theft "inflicts or threatens another with or intentionally puts him in fear of serious bodily injury" or "commits or threatens immediately to commit any felony of the first or second degree;" and defines "in the course of" theft to include "flight after the attempt or commission of the theft." The reason for this change from common-law notions is expressed as follows in the Model Penal Code § 222.1, Comment (Tent. Draft No. 11, 1960): "The thief's willingness to use force against those who would restrain him in flight strongly suggests that he would have employed it to effect the theft had there been need for it." *See* W.F. LaFave and A.W. Scott, Jr., *Handbook on Criminal Law,* (1972) Chapter 8, Section 94, p. 701 n. 56.

In 1976, the legislature decided to go even further than the Model Penal Code when it amended the 1972 Act by adding subparagraphs (iv) ("inflicts serious bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury") and (v) ("phys-

While we too may agree, or for that matter disagree, with the trial judge that a mandatory life sentence is not warranted in the case, the issue of the sentence is not the question we are called upon to decide.

ically takes or removes property from the person of another by force however slight"). 1976 June 24, P.L. 425, No. 102, § 1 *immd. effective.*

■ Under 18 Pa.C.S. § 3701(a)(2), "in the course of committing a theft" is unusual only insofar as it makes classification of robbery depend in part on behavior after the theft might be said to be accomplished. In elaborating upon this latter definition, Comment to the Model Penal Code (upon which the Pennsylvania Crimes Code definition is based) offers no "rule of thumb ... to delimit the time and space of 'flight,'" but does observe that

> "[t]he concept of 'fresh pursuit' will be helpful in suggesting realistic boundaries between the occasion of the theft and a later distinct occasion when the thief is apprehended."

American Law Institute, Model Penal Code § 222.1 Comment at p. 70 (Tentative Draft No. 11, pp. 68–72, April 27, 1960). *See also Commonwealth v. Barkley,* 335 Pa.Super. 389, 484 A.2d 189 (1984).

■ There can be no doubt that in this case there was "fresh pursuit" and "no break in the chain of events" from the time the box was stolen until decedent met his death during appellants' attempt to escape. Appellants and Jesus Lisojo conspired to steal the box and, in preparation of the theft, they armed themselves with stolen knives. The knives were steak knives and they belong to Anthony Gustaitis and his group. Appellant Samuel Maldonado stole the box and fled, followed by appellant David Maldonado and Jesus Lisojo. Anthony Gustaitis and the decedent (Steve Monahan) gave chase. Anthony caught up with Samuel and grabbed him by the shirt, but he was knocked to the ground by appellant David Maldonado, who at the time was armed with a knife. This threat of immediate bodily injury constituted robbery. 18 Pa.C.S. § 3701(a)(1)(iv). The robbery statute, as we have indicated, provides that an act is deemed "in the course of committing a theft" if it occurs in flight after the attempt or commission. 18 Pa.C.S. 3701(a)(2). Within seconds, or at the most

minutes, the decedent was killed while appellants were still in flight and acting in concert. Therefore, even in the absence of Anthony being knocked to the ground, the robbery was established when the decedent was fatally stabbed. 18 Pa.C.S. § 3701(a)(1)(i).

The fact that the fatal injury was inflicted after the box was discarded, while appellants were fleeing from the scene of the crime, does not under the facts of this case, preclude a conviction of robbery. The theft became a robbery when either Anthony was knocked to the ground or when the decedent was fatally stabbed.

We hold therefore that the evidence was sufficient to support a conviction for the crime of murder in the second degree. There was a robbery and the decedent was killed during the perpetration of that robbery.[14]

For all of the above reasons, the Judgments of Sentence are affirmed.

**14.** We reject appellants' claims of self defense as not being supported by the record and being totally contrary to statute, 18 Pa.C.S. §§ 505(b)(2), 506(a)(1); *Commonwealth v. Black,* 474 Pa. 47, 52–53, 376 A.2d 627, 630 (1977).