544 A.2d 1384

**COMMONWEALTH of Pennsylvania**

v.

**May E. STEWART, Appellant.**

Superior Court of Pennsylvania

Submitted Feb. 3, 1988.

Filed July 13, 1988.

Petition for Allowance of Appeal Denied Dec. 28, 1988.

586

Walter A. Steinbacher, Assistant Public Defender, Philadelphia, for appellant.

Brett O. Feese, District Attorney, Williamsport, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Lycoming County, sentencing appellant to a three year term of probation on charges of interference with custody of children and criminal conspiracy. We affirm.

The facts as found by the court below are as follows. Appellant's son, James Stewart, is the father of two boys, John Charles (Bugsy) born on March 8, 1978, and Bradley James (BJ) born on November 9, 1980. The children's mother, Bonnie Lee Stewart, abandoned the marital home "[s]ometime in December of 1980 or January of 1981," taking the younger child with her while John Charles remained in his father's care.[1] When she returned to retrieve the child as well as some belongings later that same day, an argument ensued and police were summoned to the residence. The children's mother was thereafter advised "to

---

[1] The mother has indicated that she departed from the home on January 5, 1981. (N.T. March 17–March 21, 1986 at p. 29.)

pursue her right through the courts . . ." or, as she testified, "So I called, the officer took, and advised me to call a lawyer the next day." (N.T. March 17–March 21, 1986 at p. 35). Accordingly, she contacted Susquehanna Legal Services and a custody action was instituted. A hearing on the matter was scheduled for February 6, 1981, but James Stewart failed to attend. As a result of the father's absence, Bonnie Lee Stewart was awarded primary custody of John Charles.[2]

What then transpired has been accurately summarized by the lower court as follows:

Testimony would indicate that sometime in January or February, before the February 6th hearing, James Stewart and Bugsy and the defendant in this case, Jack had made a fast move to the State of Maine where another daughter of the grandparents lived. The grandmother, May, remained in the Williamsport area until she terminated her employment in the summer. While the grandmother was still in the Williamsport area, an action was brought to compel her to appear in the judge's chambers to divulge information as to the whereabouts of her son and grandson. She testified under oath that she had been having difficulty with her husband (this defendant), and that her husband had left her and that she had no knowledge where he was. While the jury could certainly find that this testimony was untrue, at the very least it was clear that the grandmother had specific knowledge as of that day that the custody order had been entered awarding custody of Bugsy to the mother, Bonnie.

**2.** It would appear that Bonnie Lee Stewart also retained custody of Bradley James, although this is not an issue in the present case. With regard to the February, 1981 hearing, the lower court has noted the following:

On February 6, the mother and her attorney appeared before the Family Court Hearing Officer for a hearing on the custody petition. Neither the defendant nor his attorney appeared. After waiting 45 minutes, and it appearing from the evidence that the defendant had notice of the hearing, the Family Court Hearing Officer issued a primary custody order which was presented to the then President Judge for approval. It was confirmed in an order awarding primary custody to the mother.

During the next several years a number of efforts were made by the mother to find her child and to regain custody of him.

* * * * * *

In July of 1984, the mother learned that James and his parents were living in Dundee, New York. She arranged to go to their home in the company of a member of the Yates County Sheriff Department, Deputy Sheriff John Warner. Warner had a copy of a Lycoming County Court Order in his hand. He did not read that order to any of the Stewarts, but did summarize it to May Stewart who was the individual who answered the door. Bugsy was understandably hysterical at the prospect of being taken from the home by his mother with whom he had no contact and whose attitude toward his mother may have been poisoned by the Stewarts. The Stewarts stated that they were tired of running and were glad that it was all over. Mr. Warner advised Bonnie that he felt the Stewarts could be trusted and that they were sincere in their agreeing to abide by the order. In order to give the child a few days to adjust to the return, Bonnie agreed to leave the child in New York, with the understanding that she would come back several days later and the move would occur to Williamsport.

The Stewarts precipitiously (sic) left Dundee, New York, telling several people they were leaving for Florida. They had discussed in the past moving to Florida. In fact, they traveled south into Lycoming County where they met members of their family in a parking lot outside of Williamsport. They then proceeded on a tour which led them to Arkansas for a period of time and then into the state of Texas. In Texas, with the assistance of the Federal Bureau of Investigation, they were located and Bugsy was taken into the custody of a children's service agency. With the assistance of Dr. Lewis, the matter was brought to the attention of a judge in the State of Texas and pursuant to the provisions of the Uniform Child Custody Jurisdiction Act, the child was returned by

Dr. Lewis to Lycoming County where he was returned to the primary custody of the mother. This occurred in December of 1984.[3]

Appellant, the child's paternal grandmother, was arrested on September 28, 1985 and charged with interference with custody of children and criminal conspiracy.[4] Subsequent to the filing of various pretrial motions, including the waiver of jury trial on April 10, 1986, appellant was brought before the Honorable Harold Fink on May 15, 1986. At that time it was agreed that appellant would be tried on a case-stated basis, with the record to include evidence which had been submitted at the trials of her husband and her son.[5] Prior to the rendering of any decision, Judge Fink was reassigned to administrative duties, necessitating the declaration of a mistrial on October 16, 1986. Thereafter, appellant executed an additional waiver of jury trial and was tried without a jury on stipulated facts before the Honorable Thomas C. Raup. Appellant was convicted of the foregoing offenses in an Order dated December 30, 1986 and filed January 7, 1987. Following the denial of post-verdict motions on February 10, 1987, appellant was sentenced to a three year term of probation. This is an appeal from the judgment of sentence.

The following issues have been presented for our consideration:

3. The lower court has issued three opinions in the three separate companion cases involving the appellant, her husband and her son. In its opinion denying appellant's post-verdict motions, the court adopted the facts as recounted in opinions dealing with James R. and John C. Stewart's post-verdict motions. In the interest of judicial economy, we have done the same throughout the course of this opinion.

4. Appellant mistakenly alleges in her brief that she was charged on September 25, 1985, whereas the record is clear that a warrant was issued on September 27, 1985.

5. On November 15, 1985, the Commonwealth filed a notice of joinder indicating that the informations issued in Commonwealth v. John C. Stewart and the instant case would be tried together. However, the record reveals that defendant John C. Stewart was convicted of interference with custody of a child and criminal conspiracy on March 21, 1986. Accordingly, it would appear that the cases were not consolidated.

1. Was the prosecution barred by the statute of limitations?

2. Was the evidence insufficient to sustain appellant's conviction?

Upon review of the record and controlling authority, we affirm.

Appellant first contends that prosecution of the charges in question was barred by the applicable statute of limitations. Pursuant to 42 Pa.C.S.A. § 5552(a), "Except as otherwise provided in this subchapter, a prosecution for an offense other than murder or voluntary manslaughter must be commenced within two years after it is committed." The statute further provides that:

(d) Commission of offense.—An offense is committed either when every element occurs, *or if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the complicity of the defendant therein is terminated. Time starts to run on the day after the offense is committed.*

42 Pa.C.S.A. § 5552(d) (emphasis supplied).

Appellant has been charged with interference with custody and conspiracy. According to 18 Pa.C.S.A. § 2904, "A person commits an offense if he knowingly or recklessly takes any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so." Additionally, the Pennsylvania Legislature has defined criminal conspiracy in the following manner:

§ 903. Criminal conspiracy

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

 Appellant seems to be arguing that since her grandson was removed from this jurisdiction in January of 1981 and she was not charged in his abduction until September of 1985, the two year statute of limitations had already run at the time of prosecution. In light of the authority cited above, it is evident that the Commonwealth was not foreclosed from prosecuting the instant charges.

As noted previously, where the Legislature has demonstrated a "purpose to prohibit a continuing course of conduct" an offense is deemed committed when the continuing course of conduct terminates. The statute of limitations is said to run on the day following commission of the offense (i.e., when the "continuing course of conduct" has terminated.) It is well settled that conspiracy is a continuing offense. *See Commonwealth v. Volk,* 298 Pa.Super. 294, 305, 444 A.2d 1182, 1187 (1982) ("For purposes of statute of limitation, the crime of conspiracy is a continuing offense.") (Citations omitted.) Moreover, we conclude that the conduct delineated in 18 Pa.C.S.A. § 2904 as interference with custody is of a continuing nature.

In order to properly ascertain the meaning of a statute, we are required to consider the intent of the Legislature. As observed in *Mount Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville,* 73 Pa. Commonwealth Ct. 531, 458 A.2d 1043 (1983), "[L]egislative intent is considered the polestar of statutory construction." *Id.* at 537, 458 A.2d at 1046. (citation omitted). *See also* 1 Pa.C.S.A. § 1921. Moreover, we are permitted to examine the practical consequences of a particular interpretation. *Lehigh Valley Co–Op Farmers v. Commonwealth, Bureau of Labor and Industry,* 498 Pa. 521, 526, 447 A.2d 948, 950 (1982) ("[I]n ascertaining legislative intent, the practical results of a particular interpretation may be considered.") (citation omitted). In addition, pursuant to 1 Pa.C.S.A.

§ 1921, we are to presume that the General Assembly did not "intend a result that is absurd, impossible of execution or unreasonable." With these principles in mind, we now turn to an examination of 18 Pa.C.S.A. § 2904.

The statute in question prohibits the taking or enticing of any child under the age of 18 from its rightful custodian. We are persuaded that it is not merely the act of taking or enticing that constitutes the offense, but rather the continued maintenance of the child outside of the custodian's dominion. We are aided in this interpretation by the case of *Commonwealth v. Chubb,* 3 Pa.D & C 3d 676 (Cumberland 1976), in which the court observed that section 2904 was derived from Model Penal Code 212.4, and quoted the following language from the Joint State Government Commission relating to this section:

Although this section is somewhat similar to kidnapping, it is intended to protect parental custody from unlawful interruption, even when the child is a willing participant in the interference with custody. The offender under this section, as distinguished from the kidnapper, may be the parent or relative of the child. Removal of the child for a brief period would not be covered by this section. However, as intimated above, *this section would apply to a parent who wilfully defies a custody order by taking the child from the parent who was awarded custody.* (Emphasis supplied.)

3 Pa.D & C 3d at 679.

Although *Chubb* was primarily concerned with one of the statutory defenses to a section 2904 violation, the language quoted above (and reprinted from Toll, *Pennsylvania Crimes Code Annotated* (1974) at 347–348) would seem to indicate that it is the interruption of lawful custody, and not merely the "taking", that constitutes the statutory offense. Indeed, as appellee correctly observes, if the statute was only intended to prohibit the physical taking, there would be no reason for the Joint State Government Commission to have commented that "removal of the child for a brief period is not covered by this section." Moreover, to hold

that one who has continued to keep a child from its rightful custodian until after the statute of limitations has run is no longer guilty of interference with custody would violate the prohibition against constructions that are "absurd, impossible of execution or unreasonable." In light of the foregoing, we conclude that section 2904 deals with a continuing offense, and that the statute of limitations was tolled until John Charles Stewart was returned to the custody of his mother in December of 1984. Therefore, since appellant was charged with the instant offenses in September of 1985, the prosecution took place well within the statutory period.[6]

It is important to note at this juncture that even were we to hold that 18 Pa.C.S.A. § 2904 did not define a "continuing course of conduct", appellant would still be unable to prevail on her claim. As observed by the court below, appellant was made aware of the court order awarding custody to her daughter-in-law in July of 1984 (although it is fairly obvious that she knew of the latter's custodial rights before that date). Appellant thereafter accompanied her family on a trek which ultimately ended in Texas in an attempt to prevent Bonnie Lee Stewart from reuniting with her son. She was apprehended in September of 1985, fourteen months after being apprised of the existence of the custody order.[7] Since these actions occurred within the

6. Appellant advances a corollary to her initial argument which is not raised in her Statement of Questions Presented. Appellant asserts that 42 Pa.C.S.A. § 5552(c)(1) requires the Commonwealth's information to indicate the grounds upon which it intends to rely for the tolling of the statute of limitations. It is argued that since the Commonwealth failed to state these grounds, it cannot rely upon section (c)(1). However, the Commonwealth is not relying upon the foregoing provision. Section 5552(c)(1) deals with *exceptions* to the tolling of the statute of limitations, and is not applicable in this context. As appellee has correctly noted, the Commonwealth was relying upon 42 Pa.C.S.A. § 5552(d) dealing with a "continuing course of conduct" and not exceptions to the statute of limitations. Accordingly, its failure to comply with the dictates of section 5552(c)(1) is immaterial.

7. The lower court states that:
 (A member of the Yates County Sheriff Department) had a copy of a Lycoming County Court Order in his hand. He did not read that

two year statute of limitations, the prosecution was not time-barred.[8]

■ Appellant next contends that the evidence was insufficient to support her conviction. It is axiomatic that the evidence is to be viewed in the light most favorable to the Commonwealth, which must be given "the benefit of all reasonable inferences." *Commonwealth v. Moretti,* 358 Pa.Super. 141, 144, 516 A.2d 1222, 1223 (1986) *allocatur denied,* 515 Pa. 593, 528 A.2d 602 (1987) (Citations omitted). Appellant claims that "the evidence fails to establish that appellant 'took' or 'enticed' the child from his parent or legal custodina [sic] or that she conspired to 'take' or 'entice' the child from his legal custodian." (Appellant's Brief at 10). We disagree. The facts as set out in the lower court's thoughtful opinions could lead a jury to conclude beyond a reasonable doubt that appellant was aware of the order awarding primary custody of John Charles to his mother sometime prior to her leaving the Commonwealth and joining her husband, son and grandson in Maine. The evidence was likewise sufficient to establish that the appellant conspired with her husband and son to deprive

order to any of the Stewarts, but did summarize it to May Stewart who was the individual who answered the door.

8. Appellant is heard to argue that the courts of Lycoming County are without jurisdiction in this matter since the action in question (removing John Charles from New York) did not occur within this jurisdiction, "and the order was not properly authenticated to be valid in New York." However, as recognized by the lower court, there is evidence that the family passed through Lycoming County on their journey southward. Accordingly, jurisdiction is proper. Moreover, as the lower court aptly noted with respect to defendant, James R. Stewart:

> [T]he defendant contends that he cannot be guilty of violating the order of the Court of Common Pleas of Lycoming County while in New York State unless the Pennsylvania Order was certified by the Pennsylvania Court and filed in the State of New York. The critical issue with regard to the New York State incident however, is that it indicates once more knowledge by the defendant of the existence of the Pennsylvania Order which was followed by actual conduct of the defendant in the State of Pennsylvania in continuing his illegal interference with custody of the child as he passed through Pennsylvania.

596

Bonnie Lee Stewart of her child's company between 1981 and 1984. Accordingly, we find no error in the court below.

Judgment of sentence affirmed.