563 A.2d 1229

**COMMONWEALTH of Pennsylvania**

v.

**Anthony MARTORANO, Appellant.**

Superior Court of Pennsylvania.

Argued June 5, 1989.

Filed Aug. 22, 1989.

152

Francis X. Meehan, Philadelphia, for appellant.

Linda Perkins, Asst. Dist. Atty., for Com., appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, McEWEN, OLSZEWSKI, TAMILIA, POPOVICH, JOHNSON and MELINSON,* JJ.

OLSZEWSKI, Judge:

Appellant, Anthony Martorano, appeals from a judgment of sentence entered by the Court of Common Pleas of Philadelphia County sustaining the traffic court's imposition of a fine following appellant's conviction for speeding. For reasons delineated below, we vacate the judgment of sentence and discharge appellant.

During the early morning hours of June 19, 1986, Officer Patrick Taylor of the Philadelphia Police Department parked his patrol car, which was equipped with a speed timing device known as "Vascar," on the the Betsy Ross Bridge exit ramp onto Interstate 95. While so situated, Officer Taylor observed appellant traveling at a high rate of speed on the Bridge Street exit; moreover, a Vascar reading indicated that appellant had been traveling at an average speed of 71.81 miles per hour in a 25–miles–per–hour

* Judge Melinson did not participate in the consideration or decision of this case.

zone. The officer subsequently apprehended appellant and issued a traffic citation for appellant's violation of 75 Pa.C. S.A. § 3362(a)(3).[1]

On April 17, 1987, appellant was convicted as charged in traffic court. Appellant appealed the conviction to the court of common pleas, which convened a *de novo* hearing on May 1, 1987. At the hearing, the Commonwealth submitted a copy of the original certificate of accuracy of the Vascar unit operated by Officer Taylor. Counsel for appellant objected on the grounds that photocopies are inadmissible pursuant to this Court's ruling in *Commonwealth v. Cummings*, 338 Pa.Super. 149, 487 A.2d 897 (1985).[2] In order to provide the Commonwealth with the opportunity to obtain the original document, the Honorable Joseph D. O'Keefe continued the hearing until June 10, 1987. At that time, however, the Commonwealth was still unable to supply the original certificate. Nonetheless, the Commonwealth urged that failure to comply with *Cummings* was not fatal to its case, arguing that:

The fact that the certificate of accuracy is not here just means that the Commonwealth didn't prove prima faciely [sic] with that certificate, but the testimony and the routine course and practice clearly prove that this man

1. The statute provides as follows:
3362. Maximum speed limits
(a) General rule.—Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this subsection or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:
(1) 35 miles per hour in any urban district.
(2) 55 miles per hour in other locations.
(3) Any other maximum speed limit established under this subchapter.

2. In *Cummings,* a panel of this Court held that a photocopy of a certificate of accuracy was not admissible under the statutory hearsay exception for business and public records, 42 Pa.C.S.A. § 6109(b), and, therefore, was not admissible because it could not be authenticated by the testifying police officer who had not seen the original certificate. Similarly, in the instant case, Officer Taylor offered no testimony to establish the authenticity of the photocopy.

was speeding both under the Vacar [sic] and under the officer's observation.

Transcript at 26.

The trial court, over defense counsel's objection, admitted the evidence obtained through operation of the Vascar unit and appellant was convicted of violating § 3362(a)(3). Postverdict motions were filed and denied on July 16, 1987. In it's opinion issued pursuant to Pa.R.A.P. 1925(a), however, the *de novo* court acknowledged that "[Appellant's] contentions . . . relating to the production of the Original Certificate of Accuracy and to the approvals of the Vascar Unit and testing station by the Pennsylvania Department of Transportation are supported under the law. Absent [the] requisite foundational facts regarding the calibration and approval of Vascar Unit NO. 2054 and the approval of the EM2 testing station, the speed of Mr. Martorano's automobile, as it was clocked by the Vascar Unit, cannot properly be sustained as competent evidence." Opinion at 5. Nonetheless, Judge O'Keefe found that there was sufficient evidence independent of the Vascar reading to support appellant's conviction. Citing Officer Taylor's experience, including the fact that he had issued approximately fifteen to twenty thousand speeding citations during his more than sixteen-year tenure with the police force, the court maintained "that the opinion testimony of Officer Taylor is, itself, sufficient to uphold the speeding conviction of Mr. Martorano." Opinion at 9. This appeal followed.

Appellant raises two issues for our review:

1. Did the Lower Court err when it found the appellant guilty of speeding, 75 Pa.C.S.A. Section 3362(a)(3), where the Commonwealth failed to submit into evidence an original certificate of accuracy for the speed timing device, and where the Commonwealth further failed to introduce any competent evidence, independent of the certificate of accuracy, to show that the speed timing device used by the police officer was approved for use by the Pennsylvania Department of Transportation and further that a testing facility appointed and approved by the

Commonwealth tested the machine in accordance with the requirements of 75 Pa.C.S.A. Section 3368(d) of the vehicle code.

2. Did the Lower Court err when it found appellant guilty of speeding solely based on the police officer's opinion testimony as to speed.

Appellant's brief at 2.

We are faced with deciding the issue, previously not addressed in appellate courts of this Commonwealth, of whether a police officer's opinion testimony is sufficient grounds upon which to base a speeding violation pursuant to 42 Pa.C.S.A. § 3362. In so doing, we are guided by 75 Pa.C.S.A. § 3368, in which our legislature established comprehensive guidelines governing the implementation and maintenance of speed timing devices.

(c) Mechanical, electrical and electronic devices authorized.—

(1) Except as otherwise provided in this section, the rate of speed of any vehicle may be timed on any highway by a police officer using a mechanical or electrical speed timing device.

(2) Except as otherwise provided in paragraph (3), electronic devices such as radio-microwave devices (commonly referred to as electronic speed meters or radar) may be used only by members of the Pennsylvania State Police.

(3) Electronic devices which calculate speed by measuring elapsed time between measured road surface points by using two sensors and devices which measure and calculate the average speed of a vehicle between any two points may be used by any police officer.

(4) No person may be convicted upon evidence obtained through the use of devices authorized by paragraphs (2) and (3) unless the speed recorded is six or more miles per hour in excess of the legal speed limit. Furthermore, no person may be convicted upon evidence obtained through the use of devices authorized by paragraph (3) in an area where the legal speed limit is less than 55 miles per hour if the speed recorded is less than ten miles per hour in excess of the legal speed limit. This paragraph shall not

apply to evidence obtained through the use of devices authorized by paragraph (3) within a school zone.

As amended 1985, July 11, P.L. 204, No. 52, § 3, imd. effective; 1986, March 27, P.L. 71, No. 24, § 2, imd. effective.

(d) Classification, approval and testing of mechanical, electrical and electronic devices.—The department may, by regulation, classify specific devices as being mechanical, electrical or electronic. All mechanical, electrical or electronic devices shall be of a type approved by the department, which shall appoint stations for calibrating and testing the devices and may prescribe regulations as to the manner in which calibrations and tests shall be made. The certification and calibration of electronic devices under subsection (c)(3) shall also include the certification and calibration of all equipment, timing strips and other devices which are actually used with the particular electronic device being certified and calibrated. The devices shall have been tested for accuracy within a period of 60 days prior to the alleged violation. A certificate from the station showing that the calibration and test were made within the required period, and that the device was accurate, shall be competent and prima facie evidence of those facts in every proceeding in which a violation of this title is charged.

As amended 1986, March 27, P.L. 71, No. 24, § 2, imd. effective.

(e) Distance requirements for use of mechanical, electrical and electronic devices.—Mechanical, electrical or electronic devices may not be used to time the rate of speed of vehicles within 500 feet after a speed limit sign indicating a decrease of speed. This limitation on the use of speed timing devices shall not apply to speed limit signs indicating school zones, bridge and elevated structure speed limits, hazardous grade speed limits and work zone speed limits.

Added 1985, July 11, P.L. 204, No. 52, § 3, imd. effective.

"In order to properly ascertain the meaning of a statute, we are required to consider the intent of the Legislature."

*Commonwealth v. Stewart,* 375 Pa.Super. 585, 592, 544 A.2d 1384, 1388 (1988). "The polestar of statutory construction is to ascertain and effectuate the intention of the General Assembly." *Bronchik v. Commonwealth, Department of Transportation,* 101 Pa.Commw. 231, 233, 515 A.2d 1045, 1046 (1986), citing 1 Pa.C.S. § 1921(a); *Mt. Laurel Racing Association v. Zoning Hearing Board, Municipality of Monroeville,* 73 Pa.Commw. 531, 458 A.2d 1043 (1983). There is a presumption under under Section 1922(2) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(2), that the legislature intended the whole statute to be effective and certain. *Commonwealth, Department of Environmental Resources v. Pennsylvania Mines Corporation,* 102 Pa.Commw. 452, 457–60, 519 A.2d 522, 525–26 (1986). Moreover, we are to presume that the General Assembly did not intend a result that is absurd or unreasonable. *Stewart, supra,* quoting 1 Pa.C.S. § 1921(a); *see also Lehigh Valley Cooperative Farmers v. Commonwealth, Bureau of Employment Security Department of Labor and Industry,* 498 Pa. 521, 526, 447 A.2d 948, 950 (1982) (citations omitted).

Applying these tenets to 75 Pa.C.S.A. § 3368, we conclude that because the Legislature enacted detailed and specific instructions regarding use and maintenance of speed timing devices in this Commonwealth, it would be impermissible for us to sanction circumvention of those provisions. Therefore, we hold that in order to sustain a speeding conviction under 75 Pa.C.S.A. § 3362, the Commonwealth must present evidence which would satisfy the requirements of 75 Pa.C.S.A. § 3368. As a consequence, we also hold that a police officer's uncorroborated testimony as to speed is insufficient to support a conviction for violating Section 3362.

In support of its position that a police officer's estimation of speed, absent an exact measurement from a speed timing device, is legally sufficient to establish a speeding violation, the Commonwealth cites *Commonwealth v. Monosky,* 360 Pa.Super. 481, 520 A.2d 1192 (1987). We, however, find

*Monosky* distinguishable from the case at bar. In *Monosky*, the appellant was charged with violating 75 Pa.C.S.A. § 3361 (driving vehicle at safe speed) as opposed to 75 Pa.C.S.A. § 3362 (maximum speed limits). A panel of this Court held that the opinion testimony of police officers who observed appellant's driving was sufficient to establish a violation of the statute. Section 3361 provides as follows:

§ 3361. Driving vehicle at safe speed

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around curve, when approaching a hill crest, when travelling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Section 3361 does not require that a specific speed limit must be exceeded in order for a violation to occur. Conversely, it is necessary to prove, as an element of a 75 Pa.C.S.A. § 3362 violation, that the offender exceeded a posted speed limit. This requirement, by definition, entails greater specificity with respect to the driver's actual speed than would a case involving 75 Pa.C.S.A. § 3361. Accordingly, we find *Monosky* inapplicable to the instant situation.

Finding no precedent in this Commonwealth, our sister jurisdictions provide guidance in resolving this issue. While not controlling, we find *City of Kansas City v. Oxley*, 579 S.W.2d 113 (Mo.1979), to be factually analogous and to provide instructive and compelling rationale. In *Oxley*, the appellant was convicted of exceeding the posted speed limit. The Supreme Court of Missouri, sitting *en banc*, observed that, "The only evidence ... from which the court, as the trier of facts, could have found the defendant, Oxley, guilty

of speeding was that the officer, based on his experience as a police officer, arrived at a speed that he believed to be approximately ten miles over the posted speed limit of 35 m.p.h." *Id.* at 114. The prosecution had attempted to submit evidence which had been obtained through the use of radar, but was unsuccessful in its efforts. Thus, the only weapon remaining in its arsenal was the opinion testimony of the arresting officer. After stating that the violation had "criminal overtones" and that guilt had to be proven beyond a reasonable doubt, the *Missouri* court held that, under the circumstances, "the testimonial opinion of the officer as to the defendant's rate of speed is not substantial evidence upon which to support a finding of guilt." *Id.* at 116.[3]

Similarly, the Missouri Court of Appeals, in *City of Jackson v. Langford*, 648 S.W.2d 927 (Mo.Ct.App.1983), cited a substantial body of case law in support of the proposition that radar had long been accepted as a means of speed detection in that jurisdiction. The appellant in *Langford* had been convicted of speeding. After finding that the prosecution had failed to establish the accuracy and proper operation of the radar unit that had provided evidence in support of the conviction, the court held that the opinion testimony of two officers that the appellant had been speeding "[did] not constitute sufficient substantial evidence to find defendant guilty beyond a reasonable doubt." *Id.* at 930, citing *Oxley, supra.*[4]

3. We note that the *Oxley* court made no mention of any statutory provision similar to 75 Pa.C.S.A. § 3368 that governed the use of speed timing devices.

4. In a footnote to this section, the *Langford* court stated that "Some writers have suggested that a speeding case can never be made with opinion evidence alone. We do not read *Oxley* that broadly." 648 S.W.2d 927, 930 n. 3. Indeed, it would appear that the *Oxley* court could conceive of a case in which opinion testimony might be sufficient to support a conviction; the court, however, placed great emphasis on the fact that it was dealing with a criminal proceeding "where the standard of proof is of a higher caliber [than in civil cases]." 579 S.W.2d at 116. Moreover, the court emphasized that *"under these facts"* the opinion testimony was insufficient. *Id.* (emphasis supplied). This language leads us to conclude that while the Supreme Court of Missouri could envision a situation in which such testimony

While a review of the foregoing cases provides support for our resolution of the instant matter, we need look no further than 75 Pa.C.S.A. § 3368 in order to conclude that the Pennsylvania Legislature fully intended to require the use of speed timing devices when a driver is charged with violating 75 Pa.C.S.A. § 3362. We find, therefore, that the trial court erred in accepting Officer Taylor's uncorroborated testimony regarding appellant's speed as sufficient to convict appellant of violating 75 Pa.C.S.A. § 3362.[5]

We vacate the judgment of sentence and discharge appellant. Jurisdiction relinquished.

ROWLEY, J., files dissenting statement.

JOHNSON, J., files dissenting opinion in which POPOVICH, J., joins.

ROWLEY, Judge, dissenting.

I respectfully dissent. The majority, in arresting judgment and discharging appellant on the ground of insufficient evidence, has done so by excluding from consideration the improperly admitted evidence of the Vascar reading—in other words, by diminishing the record. As I understand the applicable case law, "we may not grant a motion in arrest of judgment on a diminished record...." *Commonwealth v. Maybee*, 429 Pa. 222, 226, 239 A.2d 332, 335 (1968). *Accord Commonwealth v. Baker*, 466 Pa. 479, 483, 353 A.2d 454, 456 (1976). Instead, in reviewing a motion in arrest of judgment, "the sufficiency of the evidence must be evaluated upon the *entire trial record*.... [A]ll evidence actually received must be considered, whether the trial rulings thereon were right or wrong." *Commonwealth v. Tabb*, 417 Pa. 13, 16, 207 A.2d 884, 886 (1965),

might be sufficient, a case involving criminal sanctions for speeding did not present that particular situation.

5. We note that it is possible that other charges may have been brought pursuant to which Officer Taylor may have testified as to speed in order to establish conditions that would have brought appellant's offense within the purview of the particular statute. *See, e.g., Monosky, supra; Commonwealth v. Dandar*, 249 Pa.Super. 327, 378 A.2d 319 (1977).

*quoted in Commonwealth v. Hazlett,* 429 Pa. 476, 478, 240 A.2d 555, 556 (1968), *and Commonwealth v. Maldonado,* 343 Pa.Super. 154, 158, 494 A.2d 402, 404 (1985) (citations omitted; emphasis in original). Since "[t]he trial court, over defense counsel's objection, admitted the evidence obtained through operation of the Vascar unit" (Majority Opinion at 1230), we are required by the cases just cited to consider the Vascar reading in evaluating appellant's sufficiency claim. With the Vascar reading in the record, the evidence is clearly sufficient to sustain appellant's conviction. However, where a conviction is based on inadmissible evidence, a new trial is warranted, *see Commonwealth v. Maybee, supra,* and appellant has preserved his right to that remedy by filing post-verdict motions for a new trial as well as in arrest of judgment. I agree that the evidence of the Vascar reading was improperly admitted in the present case, and therefore I would grant appellant the remedy of a new trial.

JOHNSON, Judge, dissenting:

The majority has not set forth the limited scope of review which must control our determination of this appeal. Ignoring uncontested facts which were found by the trial court, the majority concludes that legislative authorization of speed timing devices was "fully intended to require the use" of such devices where a motor vehicle operator is charged with driving 65 miles per hour in a 25 mile-per-hour zone. Since this disregards the plain language of the statute and improperly strips the finder of fact of its long-established perogative to weigh the evidence before it, I must dissent.

Our scope of review in motor vehicle violation cases, where the trial court has heard the case *de novo,* is to determine whether or not the findings of fact are supported by competent evidence and to correct conclusions of law erroneously made. *Commonwealth v. Gussey,* 319 Pa.Super. 398, 402, 466 A.2d 219, 221 (1983); *Cf. Rich v. Commonwealth,* 74 Pa.Comwlth. 76, 78, 458 A.2d 1069, 1071 (1983).

The appellant, Anthony Martorano, contends that the trial court erred when it found him guilty of speeding based solely on the police officer's testimony as to speed. I find no merit in that contention. I would affirm the conviction.

Our well-established standard in testing Martorano's claim is whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699 (1989). In reviewing the record of the *de novo* hearing, we must recognize that Martorano makes no objection, on this appeal, to the admission of the police officer's testimony.

Patrick Taylor had been a Philadelphia Police Officer since February 2, 1971. He had issued between 15,000 and 20,000 traffic citations. Of that number, at least 3,000 or possibly 4,000 were for speeding violations. In March 1986, Taylor was assigned to the Expressway Unit of the Philadelphia Highway Patrol. He was trained with the Vascar Unit and had been working primarily on Interstate 95 (I–95) with the principal duty of apprehending speed violators. He regularly had occasion to observe the flow of traffic with the intent to detect vehicles proceeding faster than the flow of traffic.

On June 19, 1986 at 4:45 a.m., Officer Taylor was parked on the Betsy Ross Bridge exit ramp onto I–95. He had a clear view of both the Bridge Street exit and I–95. The traffic was very light. Officer Taylor observed a vehicle coming at a high rate of speed on the Bridge Street exit off of I–95. At that location, before you enter the Bridge Street exit ramp, there is a yellow sign indicating: Speed 25 miles per hour. Officer Taylor was in an overhead position where he could see the Martorano vehicle approaching. Officer Taylor testified that the Martorano vehicle had been traveling at a higher rate than 60, 65 miles an hour and had not slowed down much, if at all, as it proceeded down the exit ramp. When asked for his opinion as to the speed of the Martorano vehicle, Officer Taylor testified that, at the time he observed the vehicle, he knew it was going in

excess of 65 miles an hour. This was in a 25 mile-per-hour zone.

The section of the Vehicle Code under which Martorano was convicted provides as follows:

§ 3362. Maximum speed limits

(a) General rule.—Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this subsection or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:

(1) 35 miles per hour in any urban district.

(2) 55 miles per hour in other locations.

(3) Any other maximum speed limit established under this subchapter.

. . . .

75 Pa.C.S. § 3362. A conviction would require proof that Martorano drove a vehicle at a speed in excess of 25 miles per hour. Officer Taylor testified that Martorano was driving 65 miles per hour in a 25 mile per hour zone. Is this testimony sufficient to support the conviction? I conclude that it is.

Until the pronouncement of the majority in this case, a police officer has been competent to render an opinion as to the speed of an observed motor vehicle, subject only to the existence of an adequate opportunity to observe. *Commonwealth v. Monosky*, 360 Pa.Super. 481, 485, 520 A.2d 1192, 1194 (1987); *Commonwealth v. Reynolds*, 256 Pa.Super. 259, 271, 389 A.2d 1113, 1119 (1978); *Commonwealth v. Forrey*, 172 Pa.Super. 65, 70, 92 A.2d 233, 235 (1952). That opinion, once rendered, is for the factfinder, in this case the trial court, to weigh. *Commonwealth v. Monosky, supra; Commonwealth v. Forrey, supra; accord, Commonwealth v. Reynolds, supra* (jury question).

I find the attempt, by the majority, to distinguish *Monosky* totally unpersuasive. In *Monosky*, as in the case now before us, the defendant was driving in a posted 25 mile per

hour speed limit zone. Two police officers testified that, in their respective opinions, the defendant was travelling approximately 50 miles per hour when initially observed. This court found such opinion testimony was not a subject matter related to a science, skill or occupation beyond the common experience of an average layperson, but rather involved a matter of common knowledge. 360 Pa.Super. at 485, 520 A.2d at 1194. Neither of the police officers had the length or depth of experience as does Officer Taylor in the case now before us. In *Monosky*, this court held that the opinion testimony of the officers was sufficient evidence for conviction under 75 Pa.C.S. § 3361 (driving vehicle at safe speed).

The majority opines that "greater specificity with respect to a driver's actual speed" is required under § 3362 (exceeding maximum speed) than under § 3361 (driving vehicle at safe speed), since the latter does not require that a specific speed limit must be exceeded. Such an abstract, facial analysis is unwarranted, given this court's scope of review. In order to unearth this "difficulty," the majority must absolutely ignore that the present appeal involves uncontested testimony that Martorano was racing 65 miles per hour in a 25 mile per hour zone. As the Commonwealth correctly points out, Martorano neither contends that a police officer is incompetent to render an opinion with regard to vehicular speed nor that the trial court improperly admitted the testimony. In "distinguishing" *Monosky*, the majority seemingly approves opinion testimony where the actual speed exceeded a posted limit by 25 miles while rejecting the same type and quality of testimony where the actual speed is 40 miles per hour over the limit!

Assuming that this appeal is properly before us, I have no difficulty in concluding that the findings of the distinguished trial judge are supported by uncontested competent evidence and that there have been no erroneous conclusions of law presented for our review. The uncontradicted testimony of Officer Taylor is abundantly sufficient to prove that Martorano had driven his vehicle in excess of the maximum 25 mile per hour limit.

The trial court found that the testimony of Officer Taylor as to the speed of the Martorano vehicle on the Bridge Street exit ramp was credible. This finding of credibility is solely the province of the trial judge, as factfinder, and binding on this court. *Commonwealth v. Jackson,* 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Trignani,* 334 Pa.Super. 526, 483 A.2d 862 (1984).

Since the evidence is sufficient to sustain the conviction under the express language of § 3362, I find no need to examine other sections of the Vehicle Code under the guise of exploring the intention of the legislature. 1 Pa.C.S. § 1921(b). The Commonwealth argues, quite cogently, that the legislature established limitations on speed timing devices not to require their use but to prevent their abuse. Like the Commonwealth, I find nothing in the Vehicle Code even remotely suggesting that the legislature intended to abolish opinion testimony of experienced police officers and require that speeding convictions depend solely on mechanical, electrical, or electronic speed timing devices.

I would affirm the judgment of sentence on the very able opinion of the distinguished trial judge, the Honorable Joseph D. O'Keefe. Hence, this dissent.

POPOVICH, J., joins.