COMMONWEALTH of Pennsylvania

v.

Debra L. GIESE, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 30, 2007.

Filed July 10, 2007.

Todd A. Woodin, Warren, for appellant.

Dennis Luttenauer, Asst. Dist. Atty., Tionesta, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., ORIE MELVIN and TAMILIA, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 This is an appeal from the judgment of sentence imposed upon Debra L. Giese after she was found guilty of interference with custody of children, 18 Pa.C.S.A. § 2904(a), recklessly endangering another person, 18 Pa.C.S.A. § 2705, and resisting arrest or other law enforcement, 18 Pa. C.S.A. § 5104. We affirm.

¶ 2 The following facts were established in the court below. On May 4, 2005, the employees of the Forest County Children and Youth Services ("CYS") were accom-

panied to appellant's home by Corporal Richard Douthit ("Corporal Douthit") and Trooper Jason Wagner ("Trooper Wagner") to serve an emergency custody order ("the order"). (Notes of testimony, 2/7/06 at 40, 58–59, 95–96.) The order, signed by the Honorable Paul H. Millin, transferred custody of the three-year-old child, J.B.,[1] from the mother, Diana Trivett ("Mother"), to CYS.[2] (*Id.* at 33, 36–37, 134.) Appellant is the maternal grandmother of J.B.; J.B. and Mother both resided with appellant. (*Id.* at 33.)

¶ 3 The officers arrived at the appellant's residence in a marked police car and in full uniform. (*Id.* at 60.) They attempted to notify the occupants of the existence of the order for the custody of J.B., but did not receive a response. (*Id.* at 60, 98.) The officers knocked on the two front doors of the residence and announced their presence several times. After again receiving no response, the group then attempted to locate the child at two other residences. (*Id.* at 42, 61.)

¶ 4 The officers returned to appellant's residence approximately 30 minutes later as they were unsuccessful in locating J.B. They knocked on the doors and verbally announced their presence, stating that they had a court order to remove J.B. as CYS was provided custody. (*Id.* at 44–46, 62–63, 100.) After no response, the corporal attempted to force open one of the front doors. (*Id.* at 101.) The door, however, had been barricaded with a couch. (*Id.* at 64, 102.)

¶ 5 Upon entering the residence, the officers came into contact with Mother.

The officers informed Mother of the emergency order to take custody of J.B., but they did not show her the actual order. (*Id.* at 65, 80.) Mother responded that J.B. was not present. (*Id.* at 65, 102) The officers advised her that they were going to search the residence for the child. (*Id.* at 65, 103.) A locked bathroom was discovered at the far end of the house. (*Id.* at 66, 103.) Corporal Douthit went to the door and, at least two times, announced "Pennsylvania State Police, we have an emergency Court Order [for custody of J.B.] ... open this door." (*Id.* at 103.)

¶ 6 Appellant subsequently emerged from the bathroom clutching J.B., who was crying. (*Id.* at 66, 89, 103.) Appellant stated, "I want to see a warrant. You are not breaking up my f—house." (*Id.* at 66.)[3] Corporal Douthit attempted to explain the emergency custody order to appellant, but did not show her the order at this time. (*Id.* at 67, 82–83, 104.) Appellant replied "you are not taking my granddaughter anywhere." (*Id.* at 67.) The corporal repeatedly advised appellant that if she did not relinquish the child, she would be placed under arrest for interference of custody of children. (*Id.* at 67, 104.)

¶ 7 Appellant refused to hand J.B. to the officers and used various profanity when speaking to the officers. (*Id.* at 104.) Corporal Douthit informed her that she was under arrest; appellant started screaming and "began a game of chase." (*Id.*) She placed J.B., who was visibly upset, in a "bear hug" and ran into a

1. We believe that it is in the best interest of the child to preserve her anonymity by identifying her by initials only and, accordingly, have changed her name throughout this memorandum. *See In re Adoption of B.J.R.*, 397 Pa.Super. 11, 579 A.2d 906 (1990).

2. J.B., Mother, and J.B.'s father had been under the supervision of CYS on May 3 and 4, 2005 due to an incident that was reported. (Notes of testimony, 2/7/06 at 33–36.)

3. The officers then handcuffed Mother for their safety as she had started to move about the living room area. (*Id.* at 66–67.)

cabinet. (*Id.* at 68, 105.) As the officers informed appellant that she was under arrest, appellant dropped J.B. to the floor and placed her full body weight upon the child. (*Id.* at 92, 105.)

¶ 8 Corporal Douthit testified that he was forced to physically remove J.B. from appellant's grasp and noted that the child was in physical distress. (*Id.* at 70, 105.) "[J.B.'s] face was red. [Her] eyes were bulging. [Corporal Douthit] assumed … we were looking at a positional asphyxiation situation…. [J.B.] was turning colors." (*Id.* at 105, 106.) Corporal Douthit felt that the child was "in imminent physical danger." (*Id.* at 108.) Trooper Wagner, however, testified that there was also a threat to the officers' safety, "[t]he threat of us either being injured during the struggle or[,] wors[t] case scenario[,] [our] weapons are exposed when you are [on the] ground fighting in that type of situation." (*Id.* at 70–71.)

¶ 9 Appellant was then placed under arrest and shown the emergency custody order upon arriving at the barracks. (*Id.* at 82–83, 107, 109.) Corporal Douthit testified that appellant physically resisted arrest, physically exerting herself to the extent that she defecated. (*Id.* at 109.)

¶ 10 A jury trial was held on February 7, 2006, and appellant was found guilty of all counts. On April 7, 2006, appellant was sentenced to not less than nine months nor more than two years less one day of incarceration to be followed by two years of consecutive probation as well as fines and costs. On May 5, 2006, she filed both a timely notice of appeal and a concise statement of matters complained of on appeal.

¶ 11 At the outset, we note a discrepancy between the issues pursued in appellant's Rule 1925(b) statement and those submitted in the statement of questions presented in her brief. Appellant attempts to raise two issues in her brief that were not included in her concise statement of matters complained of on appeal. We find that the two additional issues are waived as they were not included in the Rule 1925(b) statement filed by appellant on May 5, 2006.

¶ 12 Appellant filed a concise statement of matters complained of on her own accord and without order of the trial court. Rule 1925 contemplates that the trial court will be in receipt of a notice of appeal *before* initiating the Rule 1925 process. *See* Pa.R.A.P.1925(a) ("General rule. Upon receipt of the notice of appeal….") "Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process." *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 308 (1998). The absence of a trial court opinion poses a substantial impediment to meaningful and effective appellate review. *Id.*

¶ 13 If the trial court directs the filing of a concise statement of the matters complained of on the appeal, a failure to comply with such direction results in waiver of all objections to the order, ruling, or other matter complained of. Pa.R.A.P. 1925(b). Issues which are not set forth in the appellant's statement of matters complained of on appeal are also deemed waived for purposes of appeal. *Commonwealth v. Johnson,* 565 Pa. 51, 59, 771 A.2d 751, 755 (2001), *citing Lord, supra.* An appellant, however, may file a petition seeking leave of court to file a supplemental Pa.R.A.P. 1925(b) statement to raise additional issues or seek additional time to file such a statement. *Commonwealth v. Woods,* 909 A.2d 372, 378 (Pa.Super.2006).

¶ 14 Herein, issues three and four presented in appellant's brief were not included in her Rule 1925(b) statement.

Moreover, appellant never filed a separate petition specifically seeking leave of court to file a supplemental Pa.R.A.P. 1925(b) statement to provide notice to the trial court of these additional issues. Even though the trial court did not order the filing of the Rule 1925 statement, it clearly relied on the statement when drafting its opinion. Therefore, we will hold appellant to the issues presented in her Rule 1925(b) statement. Pursuant to our finding of waiver, we will only address the issues included in the Rule 1925(b) statement because effective appellate review is hampered by failing to present the additional issues to the trial court in the first instance.

¶ 15 As to the two issues properly raised on appeal, we note that they substantially present the same question: whether the trial court erred by refusing her proposed jury instruction regarding the charge of interference with custody of children. At the outset, we note that a substantial portion of appellant's argument supporting her issues refers to the sufficiency of the evidence. A claim concerning the sufficiency of the evidence was not raised in her Rule 1925(b) statement. Our review will be confined to the jury instruction alone.

¶ 16 "[I]t is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Porter*, 556 Pa. 301, 321, 728 A.2d 890, 899 (1999). We review a challenge to a jury instruction to determine if the trial court abused its discretion or committed

an error of law. *Commonwealth v. Brown*, 911 A.2d 576, 582–583 (Pa.Super.2006). "When reviewing a challenge to a jury instruction, we must review the charge as a whole." *Commonwealth v. Spotz*, 563 Pa. 269, 286, 759 A.2d 1280, 1290 (2000), *cert. denied*, 534 U.S. 1104, 122 S.Ct. 902, 151 L.Ed.2d 871 (2002).

¶ 17 A brief review of the statute itself is helpful to resolve this issue. Violation of a custody order may be punishable as a criminal offense. A person commits the offense of interference with custody of children if he or she knowingly or recklessly *takes* or entices any child under the age of 18 years from the custody of its parent, guardian, or other lawful custodian, when he or she has no privilege to do so. 18 Pa.C.S.A. § 2904(a) (emphasis added).

¶ 18 Appellant, relying on *Commonwealth v. Rodgers*, 410 Pa.Super. 341, 599 A.2d 1329 (1991), claims that the court abused its discretion as the jury should have been instructed that the element of "taking" required an "affirmative physical removal of the child." (Appellant's brief at 6.)[4] The instruction provided by the trial court is as follows:

Taking from custody means there is a substantial interference with parental or custodial control. Parental or custodial control means the control exercised by any person or agency which has been granted custody of the child by a Court of competent jurisdiction.

In order for there to be a taking, there must be substantial interference with custodial control, and this taking has to be accomplished by a physical act. Notes of testimony, 2/7/06 at 251–252. We agree with the trial court, however, that the facts of the instant case render

---

4. Although the table of contents suggests that the pages of appellant's brief are numbered, we note that other than the first page of her argument section, no other pages contain numbers. Pa.R.A.P. 2173.

appellant's suggested instruction, based on *Rodgers*, too limited.

¶ 19 In *Rodgers*, the defendant was charged with interference with child custody after she permitted three minor boys to sell drugs to customers that came to her residence. *Rodgers, supra* at 1330. The court looked at the elements of the statute and found the evidence insufficient to support the conviction, as the Commonwealth presented no evidence that the defendant took or enticed the minors from their parents.

¶ 20 When examining the element of taking, the *Rodgers* court held

a 'taking' from custody connotes a substantial interference with parental control. Although no case has assigned a specific definition to 'taking,' it *appears* that an affirmative physical removal of the child is necessary. . . . *Finally, it is the interruption of lawful custody, and not merely the 'taking'*, [sic] that constitutes the statutory offense.

*Id.* at 1331 (citations omitted) (emphasis added).

¶ 21 Herein, the trial court held that appellant's proposed instruction based on *Rodgers* was inapplicable as the facts were substantially different. Additionally, the trial court found that *Rodgers* was not "persuasive" as the *Rodgers* panel stated "it appears" that an affirmative physical removal is necessary in meeting the taking requirement. (Trial court opinion, 6/26/06 at 4.)

¶ 22 Rather, the trial court found the facts of *Commonwealth v. Stewart*, 375 Pa.Super. 585, 544 A.2d 1384 (1988), to be more significant in regard to defining "taking" for the jury. In *Stewart*, the defendant was guilty of violating 18 Pa.C.S.A. § 2904(a) by refusing to return his child to the physical custody of the child's mother. *Id.* at 1385–1386. The *Stewart* court held that it is "not merely the act of taking or enticing that constitutes the offense, but rather the continued maintenance of the child outside the custodian's dominion." *Id.* at 1388. The court further stated "this section would apply to a parent who willfully defies a custody order by taking the child from the parent who was awarded custody." *Id.*

¶ 23 Contrary to appellant's assertion, after reviewing the charge in its entirety, the instruction adequately and accurately explained the law to the jury. We find no abuse of discretion in the trial court's instruction to the jury. As the trial court noted, the only difference between appellant's proposed jury instruction and the instruction provided to the jury was that the taking be accomplished by a physical act rather than requiring affirmative physical removal. (Trial court opinion, 6/23/06 at 5.) The court explained that the word "removal" suggested "a snatching of the child from one person to another." (*Id.*) The definition of "taking" the court provided focused on a physical act which resulted in "an interruption of lawful custody"; this is also akin to the analysis in *Rodgers*. *See Rodgers, supra* at 1331. The instruction provided is consistent with the statute and adequately conveyed the definition of "taking" under the statute.

¶ 24 The substance of the suggested instruction was covered by the trial court's charge as a whole—that the defendant interfered with lawful custodial control. Again, the trial court has broad discretion in phrasing its instructions, and we find that the law was adequately conveyed to the jurors.

¶ 25 Judgment of sentence affirmed.

¶ 26 ORIE MELVIN, J., concurs in the result.