J-S41040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THEODORE IRVING SKINNER, | |
| Appellant | No. 1871 MDA 2014 |

Appeal from the Judgment of Sentence October 20, 2014
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0007243-2013

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 06, 2015**

Appellant, Theodore Irving Skinner, appeals from the judgment of sentence imposed after his bench conviction of attempted interference with custody of a child, luring a child into a motor vehicle, and harassment.[1]  We affirm.

The relevant facts are as follows.  On September 17, 2013, the sixteen-year-old victim went to the Dover Senior Center to help his mother, K.S., instead of going to school, because he had a migraine from new medication he was taking for Attention Deficit Disorder.  He was bringing trash to the dumpster at the end of the day when Appellant approached him

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a)/2904(a), 2910(a), and 2709(a)(1), respectively.

in the parking lot, and "asked [him] to help him out with something at his car." (N.T. Trial, 6/16/14, at 6). The victim agreed and followed Appellant to the vehicle. Once there, there was nothing for the victim to help with, and Appellant began asking him questions such as: "Do you think about girls?," "if [he] wanted to go do something fun," and "if [he] needed a ride home[.]" (*Id.* at 8; *see id.* at 9-11). The victim responded that he was with his mother and could not leave. Appellant stated, "Don't worry, Mom doesn't need to know; we'll be back soon enough." (*Id.* at 8). In fact, every time the victim stated that he had to stay at the Senior Center, Appellant responded: "Are you sure you don't want to go somewhere fun, we can have a lot of fun, no one needs to know. Just different things like that." (*Id.* at 9).

Throughout the encounter, Appellant kept his hand on either the victim's shoulder or his back. (*See id.* at 9). After the second or third time the victim told Appellant that he could not go with him, Appellant aggressively grabbed his arm to prevent him from walking away. (*See id.* at 11). Appellant continued to ask the victim about girls and told him "there's not much difference between me and a girl; mine's on the outside and their's is on the inside." (*Id.* at 9). When asked what grade he was in at school, the victim responded that he was in ninth. (*See id.*).

During the exchange, K.S. came outside to ask what was taking the victim so long. (*See id.* at 10). Before the victim could respond, Appellant

stated that they were discussing biology, "even though at no point were [they] ever talking about that." (*Id.*). The victim gave K.S. a "look like something was wrong[.] . . . A mom knows." (*Id.* at 29). K.S. told the victim to come inside, and thinking he was right behind her, she went back into the Senior Center, not realizing that Appellant had grabbed the victim's arm to pull him back. (*See id.* at 29-30). Appellant asked the victim one final time if he wanted to go have some fun. (*See id.* at 11). When the victim declined, Appellant told him "my offer still stands," got into his vehicle, and left. (*Id.*).

When the victim went inside the Senior Center, he told K.S. what had happened with Appellant. She and her boss called the police. The victim spoke with Officer Donald L. Godfrey, Jr. of the Northwestern Regional Police Department. At the officer's request, the victim created a written statement detailing the events.

The next day, Appellant again appeared at the Senior Center, and asked K.S. if the victim was around. K.S. called the police, and Officer Godfrey responded. Officer Godfrey spoke with Appellant, informing him that the conversation was being taped by the patrol cruiser's video equipment. In that interview, Appellant referenced possibly taking the victim to a lake approximately thirty to forty-five minutes from the Senior Center. (*See id.* at 35). Appellant denied attempting to force the victim into the car.

On February 4, 2014, the Commonwealth filed an amended information[2] against Appellant. The Commonwealth presented three witnesses at the June 16, 2014 bench trial, and Appellant waived his right to testify. Based on the credible and "essentially uncontradicted" testimony of the victim and the other Commonwealth witnesses, the trial court convicted Appellant of the above mentioned crimes. (*Id.* at 44; *see id.* at 45). On October 20, 2014, the court sentenced him to an aggregate term of not less than eight months' house arrest, plus thirty-six months of concurrent probation. On November 3, 2014, he timely[3] appealed.[4]

Appellant raises two questions for this Court's review:

_____

[2] The Commonwealth filed the original information on November 8, 2013. Count One charged Appellant with interference with custody of a child. The amended information changed the count to **attempt** to interfere with custody of child. The amended information does not appear on the docket. However, the transcript of the February 4, 2014 pre-trial hearing reveals that the Commonwealth provided the court with the amended information with Appellant's counsel's agreement. (*See* N.T. Hearing, 2/04/14, at 2-3).

[3] On October 30, 2014, before Appellant filed his notice of appeal, the Commonwealth filed an uncontested motion for amendment of sentence, which the court granted on November 7, 2014. In the interest of judicial economy, we treat the November 3, 2014 notice of appeal as timely, although filed before the court's disposition of the post-sentence motion. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[4] Appellant filed a timely Rule 1925(b) statement pursuant to the court's order on November 25, 2014, and the court filed an opinion on December 29, 2014. *See* Pa.R.A.P. 1925.

> I.    Whether the evidence was insufficient as to the verdict as to interference with custody of a child in that there was insufficient evidence that [Appellant] attempted to take or transport the alleged victim for a substantial distance for a substantial period of time[?]
>
> II.    Whether the evidence was insufficient to support the verdict of luring a child into a motor vehicle in that the language of 18 Pa.C.S.A. §[]2910 would require that the child actually be lured into the motor vehicle; and that [] Appellant sufficiently enticed the v[i]ctim in an attempt to get him in the car[?]

(Appellant's Brief, at 4) (emphasis and most capitalization omitted).

Appellant's issues challenge the sufficiency of the evidence to support his convictions. (*See id.*). Our standard of review of this matter is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (citation omitted).

Appellant argues in his first issue that the evidence was insufficient to support his conviction of attempt to interfere with custody of a child. (*See* Appellant's Brief, at 8-11). Specifically, he maintains that because "[he] offered no actual enticement to the . . . victim to get him in his vehicle and take him from the custody of his mother[,]" the Commonwealth failed to prove the crime. (*Id.* at 10). We disagree.

"A person commits the offense of interference with custody of children if he or she knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian, or other lawful custodian, when he or she has no privilege to do so." *Commonwealth v. Giese*, 928 A.2d 1080, 1083 (Pa. Super. 2007) (quoting 18 Pa.C.S.A. § 2904(a)) (emphasis omitted). Further, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

Here, the evidence was undisputed that Appellant approached the victim in a parking lot, and asked him to help with something at his car. (*See* N.T. Trial, 6/16/14, at 6-7). Once right outside the vehicle, Appellant asked the victim if he liked girls and, when the victim replied that he did, he stated that there was not much difference between him and a girl, other than the fact that his parts were on the outside. (*See id.* at 8-9). When

Appellant asked his grade in school, the victim responded that he was in ninth. (*See id.* at 9).

Although he did not have permission to take the victim anywhere, Appellant repeatedly asked him if he wanted to go do something fun. (*See id.* at 8-11, 31). When the victim responded that he had to stay at the Senior Center, Appellant told him that they only would be gone for a little while and that no one, including his mother, needed to know. (*See id.* at 8-9). Throughout the encounter, Appellant had his hand on the victim and, when the victim attempted to walk away, Appellant aggressively grabbed his arm to prevent him from leaving. (*See id.* at 9, 11). Appellant did not "explain what he meant by go have some fun[,] [but] just said, Don't worry about it, it will be fun, trust me." (*Id.* at 10).

Based on the foregoing, we conclude that the Commonwealth established that Appellant did not have permission to take the minor victim out of his mother's custody, but he attempted to do so by enticing him with repeated offers to go with him to have some "fun." Therefore, the trial court properly found that the Commonwealth proved Appellant took a substantial step in attempting to interfere with the custody of a child. *See Harden*, *supra* at 111. Appellant's first issue does not merit relief.[5]

_____

[5] We note further that, although Appellant argues that the Commonwealth was required to prove that he attempted to transport the victim "for a substantial distance for a substantial period of time[,]" (Appellant's Brief, at
*(Footnote Continued Next Page)*

In his second claim, Appellant argues that the evidence was insufficient to support his conviction of luring a child into a motor vehicle. (*See* Appellant's Brief, at 11-15). Specifically, he maintains "that the plain language of 18 Pa.C.S.A. § 2910 . . . require[s] that the child actually be lured into the motor vehicle and, in addition, [he] did not take any substantial step relative to luring the . . . victim into a motor vehicle." (*Id.* at 12). This issue does not merit relief.

Section 2910 of the Crimes Code provides, in pertinent part: "[A] person who lures or **attempts to lure** a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits an offense." 18 Pa.C.S.A. § 2910(a) (emphasis added). As stated by our Supreme Court:

> . . . Section 2910 . . . sets forth three requirements the Commonwealth must establish beyond a reasonable doubt to convict an individual of the offense of attempted luring of a child into a motor vehicle: (1) the individual attempted to lure a child into a motor vehicle; (2) without the express or implied consent of the child's parent or guardian; and (3) under circumstances which did not reasonably indicate the child is in need of assistance.

*Commonwealth v. Hart*, 28 A.3d 898, 908-09 (Pa. 2011).

_____

*(Footnote Continued)* ────────────

8), he provides no pertinent caselaw that this is required for a conviction of interference with custody of a child, and we are not aware of any. (*See id.* at 8-11). Moreover, this argument would fail where the Commonwealth showed that Appellant intended to take the victim to a lake approximately thirty to forty-five minutes away. (*See* N.T. Trial, 6/16/14, at 35).

Here, Appellant argues that "[his] offer of a ride home or somewhere to have fun was not accompanied by sufficient enticement or inducement[]" to satisfy the statute's first element. (Appellant's Brief, at 13) (citation omitted).[6] We disagree.

We find **Hart**, on which Appellant relies extensively, (**see** Appellant's Brief, at 13-15), to be instructive, and, because its facts are distinguishable, we conclude it supports Appellant's conviction. The relevant facts of **Hart** are as follows. On a cold and overcast February morning, Hart drove up to two boys who lived in his neighborhood as they were walking from their homes to their middle school, and offered them a ride to either the school or the local WaWa. **See Hart**, **supra** at 900. WaWa, the police station, and the school were all located nearby on the same road. **See id.** The boys declined the offer, and Hart drove off. **See id.** Two days later, it was raining in the morning when Hart was on his way to WaWa, and he again saw the two boys and approached them, offering them a ride to school. **See id.** at 901. The boys again declined the offer, confirmed that they were certain, and Hart then drove away without any further communication with them. **See id.** He testified at trial that, because he was headed that way

---

[6] Appellant also "note[s]" that "[he] was not charged with 'attempting' to lure the . . . victim into his car." (Appellant's Brief, at 13). Although he does not provide any argument or discussion in support of this comment, (**see id.**), we observe that the offense of luring a child into a vehicle includes the attempt to do so and any argument in this regard would fail. **See** 18 Pa.C.S.A. § 2910(a).

anyway, he believed he was doing a nice thing and that the boys' parents would not mind in view of the fact that they were neighbors. ***See id.***

In reaching its conclusion that Hart's actions did not constitute luring, our Supreme Court observed:

> Consistent with the plain and unambiguous meaning of the term "lure," we . . . hold that an attempt to lure under Section 2910 does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle, in addition to the offer of the ride, particularly under such circumstances which suggest the child is being led into a potentially harmful situation. . . . The enticement or inducement need not necessarily be express, but could also arise where the enticement and inducement is evident from the circumstances accompanying the making of the offer.
>
> *       *       *
>
> Turning to the evidence herein, when viewed in a light most favorable to the Commonwealth, as our standard of review requires, the record establishes only that Appellant offered two boys from his neighborhood a ride to school on two separate occasions—nothing more. He extended no other enticement, nor did he offer any other inducement to the boys for them to enter his car. Likewise, he did not direct or command them to enter his vehicle, nor did he threaten them with harm if they failed to accept his offers of a ride. Consequently, under these circumstances, where the evidence of record showed only that Appellant twice offered a ride to two children, and did not additionally provide any temptation or enticement for the boys to enter his vehicle, the mere act of offering the ride, standing alone, did not fall within the common, ordinary, and accepted meaning of a "lure." The evidence, therefore, is insufficient as a matter of law to support Appellant's conviction for attempted luring. . . .

**Hart**, **supra** at 910, 912 (citation omitted).

Here, the facts support the opposite result. For example, the evidence established that Appellant approached the victim, asked him questions about whether he liked girls, and if he would like to go do something fun. (**See** N.T. Trial, 6/16/14, at 6, 8-9, 11). Each time the victim stated that he needed to stay at the Senior Center with his mother, Appellant responded that they only would be gone for a little while, and that no one else, including his mother, needed to know. (**See id.** at 8-9). Although Appellant did not specifically identify what they were going to do, he told the victim to trust him, it would be fun. (**See id.** at 10). He also stated that he was not much different from a girl except his parts were on the outside. (**See id.** at 9). Finally, he physically held the victim back when he tried to walk away. (**See id.** at 11).

Based on the foregoing, we conclude that because "[t]he enticement or inducement need not necessarily be express, but could also arise where the enticement and inducement is evident from the circumstances accompanying the making of the offer[,]" **Hart**, **supra** at 910, the trial court properly found that the Commonwealth provided sufficient evidence of Appellant's attempt to lure the victim into his car with the promise of "fun." **See id.** at 909-12; **Harden**, **supra** at 111. Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015