J-S54001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMY LAUREN TOMPKINS | : | |
| | : | |
| Appellant | : | No. 939 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 17, 2020
In the Court of Common Pleas of Susquehanna County Criminal Division
at No(s): CP-58-CR-0000228-2019

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 22, 2021**

Appellant Amy Lauren Tompkins appeals from the judgment of sentence imposed following her jury trial conviction of interfering with custody of children.[1] Specifically, she claims that the evidence was insufficient to support her conviction because the Commonwealth failed to establish that she took her son, and claims that the verdict was against the weight of the evidence. We affirm.

We summarize the factual background based on a review of the record of the jury trial.[2] On February 15, 2019, after Susquehanna County Children and Youth Services (CYS) became involved with D.C. because of truancy, a court found Appellant's then-fourteen-year-old son, D.C., to be a dependent

---

[1] 18 Pa.C.S. § 2904(a).

[2] We review the record in a light most favorable to the Commonwealth. *See **Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237 (Pa. 2007).

child and transferred custody of D.C. to CYS. Neither D.C. nor Appellant appeared at the dependency hearing. CYS caseworker Chad Weaver and a colleague traveled to Appellant's house after the adjudication of dependency to notify them of the order. *See* N.T. Trial, 3/11/20, at 54.

Mr. Weaver testified that Appellant did not respond when he initially knocked on her door and returned to his car to retrieve tape to place a copy of the dependency order on Appellant's door. *See id.* at 55. By the time Mr. Weaver returned to tape the paperwork to the door, Appellant appeared and was talking to his colleague. *See id.* Mr. Weaver stated that Appellant refused to take the paperwork from him, and he later taped it to the door. *See id.* at 55-56. As he was leaving, he saw Appellant take the paperwork from her door and look at it. *See id.* at 56.

Mr. Weaver testified that he told Appellant that a court had found D.C. dependent and transferred custody to CYS. Appellant stated D.C. was not at home. Mr. Weaver then asked Appellant to let him know if D.C. returned. *See id.* at 55-56. Mr. Weaver testified that he made random stops at the house attempting to locate D.C., but never saw him. *See id.* at 57-58.

After being unable to locate D.C., CYS filed a missing person's report with the Pennsylvania State Police on February 15, 2019. *See id.* at 70. Later that evening, Trooper Gerard Dempsey and Trooper Jeffrey Sosko went to Appellant's house to locate D.C. or obtain information about his whereabouts. Appellant told the troopers that D.C. had left the house that morning while she was in the shower and that she had not seen him since. Trooper Sosko

testified that when he informed Appellant of the missing person investigation for D.C., Appellant "was not happy" and questioned how a missing person investigation started when she, as D.C.'s mother, did not report him as missing. *Id.* at 78-79. According to Trooper Sosko, when he told Appellant that he wanted to ensure D.C. was safe and not "wandering the streets," Appellant responded that "she kn[ew] he's not wandering the streets . . . because she kn[ew] her son." *Id.* at 80-81.

Appellant told the troopers that she had heard from D.C., but she did not want to give them the phone number from which he called her. Appellant provided the police with a description of D.C., noting that he had been wearing black sneakers, blue jeans, and a blue or black hoodie top. Trooper Sosko testified that he asked Appellant for a photograph of D.C., but Appellant could not find one. Trooper Sosko indicated that a press release regarding D.C. was issued, but it yielded no information.

On February 19, 2019, Troopers Sosko and Dempsey returned to Appellant's house for a follow-up. Trooper Sosko stated: "As soon as [Appellant] opened the door, she was very upset, and I would classify angry at us for being there. She asked us why we were there." *Id.* at 84. Initially, Appellant told them nobody was at the house, but they heard footsteps upstairs. Trooper Dempsey testified that when he first heard footsteps at Appellant's house, he yelled out for D.C. An individual, later identified as D.C.'s girlfriend, came downstairs from an upper level of the house during the interview. Both troopers testified that they continued to hear footsteps

- 3 -

upstairs, although they did not see any other people. *See id.* at 84, 86, 114-15. When Trooper Dempsey again asked Appellant if D.C. was upstairs, "[s]he, again, stated no, and she asked [them] to leave the residence at that time." *Id.* at 114-15.

On the morning of March 6, 2019, Detective Justin Sprout with the Susquehanna County District Attorney's Office drove to Appellant's house and saw Appellant's grey sedan in the driveway. Later that afternoon, Detective Sprout returned to the house and noticed that the grey sedan was gone. He left in search of the vehicle and after finding it, followed it back to Appellant's house. As he approached the sedan, Appellant exited the front passenger seat.

Detective Sprout asked Appellant where D.C. was, and she shrugged her shoulders. He then approached the sedan and saw D.C. crouching down in the backseat with the doors locked. D.C.'s girlfriend was leaning over D.C. D.C. initially did not comply with Detective Sprout's orders to exit the vehicle, and the detective tried to get into the vehicle, but the door was locked. The detective stated that as Appellant unlocked the door, she was asking him not to shoot D.C. The detective noted that he did not have his weapon drawn at any point during the encounter. Appellant unlocked the back door, and Detective Sprout got D.C. out of the car and turned him over to Pennsylvania State Police troopers.

On March 26, 2019, Trooper Sosko filed a criminal complaint charging Appellant with interference with custody of a child. On July 19, 2019, the

Commonwealth filed an information asserting, in part, that Appellant, "on or about Wednesday the 6th day of March, 2019 . . . did have D.C. . . . in her custody when she was aware that there was a Court Order granting legal custody to [CYS.  Appellant] was also aware that the PSP Gibson [station] was actively searching for the child and entered him into NCIC as a missing person."  Information, 7/19/19.

At trial, the Commonwealth presented the evidence summarized above.  Appellant then testified in her own defense, stating that she had received a call from D.C. on March 6, 2019, asking her to pick him up in Binghamton, New York, because he was ready to turn himself in.  Appellant did not have a driver's license, so she called her friend and asked him to drive to Binghamton with her to pick up D.C.  Appellant stated that she did not see D.C. from February 15, 2019, until March 6, 2019, but she did have phone contact with him on occasion.

At the conclusion of trial, the jury found Appellant guilty of interference with custody of a child.  On June 17, 2020, prior to the start of the sentencing hearing, Appellant made oral motions for extraordinary relief or a judgment of acquittal and for a new trial because the verdict was against the weight of the evidence.  *See* N.T. Sentencing Hr'g, 6/17/20, at 3.  The trial court denied Appellant's motions, and sentenced Appellant to twenty-four months' probation.  Appellant did not file post sentence motions.

Appellant timely appealed and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant presents the following questions on appeal:

1. A conviction for interfering with custody of children (18 Pa.C.S. [§] 2904(a)) requires the defendant to "take" a child from custody. Should a conviction be reversed where the evidence fails to establish that the defendant substantially interfered with the child's custody, physically removed the child from custody or maintained the child outside of the custody holder's control?

2. Is it manifestly unreasonable for a trial court to deny a motion for a new trial where a jury's finding of guilt is so contrary to the evidence that it shocks one's sense of justice?

Appellant's Brief at 5 (some capitalization omitted).

Prior to addressing the first issue raised, we must assess whether Appellant preserved her sufficiency claim for appeal. "A defendant may challenge the sufficiency of the evidence to sustain a conviction . . . in one or more of the following ways: (7) a challenge to the sufficiency of the evidence made on appeal." Pa.R.Crim.P. 606. In addition, "[w]e have repeatedly held that [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Ellison**, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations and quotation marks omitted). Presently, Appellant's 1925(b) concise statement claims that the Commonwealth failed to establish

the required element of a taking. **See** Concise Statement of Errors, 8/22/20, at 1. Therefore, she has preserved her challenge to the sufficiency of the evidence, and we will address the merits of her first issue.

Appellant claims that the evidence was insufficient to support her conviction of interfering with custody. Specifically, she contends that the Commonwealth failed to establish that she took or enticed D.C. from the lawful custody of his guardian. **See** Appellant's Brief at 14. She argues that there was no evidence that she physically took D.C. or physically removed him from the custody of CYS. Appellant further alleges that there was no evidence that she maintained D.C. outside CYS's dominion. **See id.** at 14-16. Therefore, Appellant claims the Commonwealth failed to prove the first element of interfering with custody.

The Commonwealth argues that the circumstantial evidence introduced at trial supported Appellant's conviction for interference with custody. It argues that Appellant substantially interfered with CYS's control by refusing to provide contact information for D.C. to law enforcement and refusing to allow troopers into her house when they were looking for D.C. **See** Commonwealth's Brief at 8-9. The Commonwealth asserts that "each one of these uncooperative acts showed [Appellant's] control over her son," and "by obstructing all of these efforts, she deliberately created an extended period of interruption of lawful custody" by CYS. **Id.** at 10-11.

The trial court found that Appellant "plainly exercised 'possession, power and control' over D.C., *i.e.*, she was not complying with the dependency order,

she maintained possession of D.C., she refused to give up her control of D.C. and she attempted to maintain her parental power over D.C." Trial Ct. Op., 11/1/19, at 7 (footnote omitted); *see id.* at 7-8.

The standard of review for a challenge to the sufficiency of evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hewlett*, 189 A.3d 1004, 1008 (Pa. Super. 2018) (citation omitted). "Both direct and circumstantial evidence must be considered equally when assessing the sufficiency of the evidence." *Commonwealth v. Davalos*, 779 A.2d 1190, 1193 (Pa. Super. 2001) (citation omitted). "Furthermore, if a jury could have reasonably determined from the evidence adduced that all of the necessary elements of the crime

were established, then the evidence will be deemed sufficient to support the verdict." ***Id.*** (citation omitted).

Chapter 29 of the Pennsylvania Crimes Code, Section 2904, sets forth the elements of interference with custody of children.

> **§ 2904. Interference with custody of children**
>
> **(a) Offense defined.**—A person commits an offense if he knowingly or recklessly takes or entices any child under the age of 18 years from the custody of its parent, guardian or other lawful custodian, when he has no privilege to do so.

18 Pa.C.S. § 2904(a). Because Section 2904 does not define "takes", we discuss a brief history of the case law that presents how Pennsylvania courts have interpreted this Section.

In ***Commonwealth v. Stewart***, 544 A.2d 1384, 1385 (Pa. Super. 1988), the appellant refused to return the child to the mother's custody and fled with the child, moving around the country for five years. After the child was located and returned to mother, the appellant was convicted of interfering with custody. On appeal, the ***Stewart*** Court considered whether the three year statute of limitations for interference with custody was violated when charges were filed five years after having taken the child from the custodial parent, but where the appellant maintained custody of the child during those five years. The Court reasoned that

> [t]he statute in question prohibits the taking or enticing of any child under the age of 18 from its rightful custodian. We are persuaded that it is not merely the act of taking or enticing that constitutes the offense, but rather the continued maintenance of the child outside of the custodian's dominion.

*Stewart*, 544 A.2d at 1388. Holding that interference with custody constitutes a continuing offense such that the statute of limitations would toll when the child was returned to the rightful custodian, the *Stewart* Court found that the statute of limitations was not violated.

In *Commonwealth v. Rodgers*, 599 A.2d 1329, 1330 (Pa. Super. 1991), the appellant set up an arrangement where minors could sell drugs from her apartment in exchange for giving her a share of the drugs and money. The Court reasoned that "[a] 'taking' from custody connotes a substantial interference with parental control. Although no case has assigned a specific definition to 'taking,' it appears that an affirmative physical removal of the child is necessary." *Rodgers*, 599 A.2d at 1331 (citations and some internal quotation marks omitted) (emphasis added). The *Rodgers* Court concluded that the evidence was not sufficient because the Commonwealth "presented absolutely no evidence that appellant took or enticed any of the minor children, nor did it show that she substantially interfered with the parents' interest in their children." *Id.*

In *Commonwealth v. Giese*, 928 A.2d 1080 (Pa. Super. 2007), a court transferred custody of the appellant's granddaughter to CYS. *See Giese*, 928 A.2d at 1081. After officers entered the appellant's house to locate the child, they found the appellant hiding in a locked bathroom with the child. She then held the child to herself and hid, and then ran from officers, at one point throwing herself to the ground with the child beneath her. *See id.* at 1081-82. The appellant was convicted of interference with custody and related

offenses. On appeal, the appellant argued that the trial court should have instructed the jury that a taking requires an "affirmative physical removal" in accordance with **Rodgers**. **Id.** at 1082. The **Giese** Court found that the trial court did not err or abuse its discretion when it instructed the jury that "[i]n order for there to be a taking, there must be substantial interference with custodial control, and this taking has to be accomplished by a physical act." **Giese**, 928 A.2d at 1083 (emphasis added).[3]

In sum, the case law shows that to establish the first element of interference with custody; that the defendant took the child—the Commonwealth must show a taking accomplished by a physical act. **See Giese**, 928 A.2d at 1083. After the initial taking, the act of interference continues only if the individual continually maintains the child outside of the custody of the legal custodian. **See Stewart**, 544 A.2d at 1388.

Viewing the record in a light most favorable to the Commonwealth as verdict winner, and considering all reasonable inferences therefrom, we

_____

[3] We note that we disagree with the trial court's interpretation of this Court's holding in **Giese** and the Commonwealth's assertion that a taking may occur without an accompanying physical act. **See** Trial Ct. Op. at 8; Commonwealth's Brief at 8-9. In a parenthetical discussion, the trial court described **Giese** as "rejecting [the] suggestion that 'taking' under § 2904(a) 'has to be accompanied by a physical act." Trial Ct. Op. at 8. However, the **Giese** Court rejected the defendant's suggestion that a taking had to be an "affirmative physical removal" of the child but stated that a taking still required a "substantial interference with custodial control accomplished by a physical act." **Giese**, 928 A.2d at 1082-83. Accordingly, contrary to the trial court's suggestion, **Giese** affirmed that a taking must be accomplished by a physical act but rejected the suggestion that the physical act requires removing the child. **See id.** at 1083.

conclude that the jury's finding that Mother took D.C. is supported by the record. *See Hewlett*, 189 A.3d at 1008. We conclude that based on this record it is reasonable that the jury as factfinder could infer taking circumstantially given the evidence presented of Appellant's reluctance to cooperate with the missing person investigation, the footsteps that troopers heard coming from upstairs in Appellant's house when she stated that nobody else was home in fact belonged to D.C., in addition to the Commonwealth's introduction of witness testimony that when Detective Sprout finally located D.C., he was being driven in Appellant's car, and was hiding in the backseat.

Accordingly, based on our review of all of the evidence presented at trial and in light of our standard of review, we conclude that the jury could have reasonably determined that Appellant took D.C., and accomplished such taking by a physical act. *See Hewlett*, 189 A.3d at 1008; *Davalos*, 779 A.2d at 1193. We do not agree with Appellant that the evidence is so weak and inconclusive that no probability of fact can be drawn from the combined circumstantial and direct evidence. Therefore, we conclude that the evidence was sufficient to support Appellant's conviction of interference with custody.

In her second issue, Appellant claims that the verdict was against the weight of the evidence. She alleges that based on the evidence that the Commonwealth produced, which she argues only established that Appellant was in a car with D.C. for less than one minute, and the uncontradicted evidence presented by Appellant, the finding of guilty was contrary to the

evidence and shocking to one's sense of justice. *See* Appellant's Brief at 21-22.

We first note that a weight challenge must be preserved in either a post sentence motion, a written motion before sentencing, or orally prior to sentencing. *See* Pa.R.Crim.P. 607(A). Here, although Appellant did not file a post-sentence motion, she made an oral motion that she was entitled to a new trial because the verdict was against the weight of the evidence. Therefore, she has complied with the requirements of Rule 607, and we turn to the merits of her claim. *See* Pa.R.A.P. 607(A)(1).

When considering a challenge to the weight of the evidence supporting a conviction, a trial court must consider the following legal principles.

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Weir*, 201 A.3d 163, 167–68 (Pa. Super. 2018) (citation omitted), *aff'd*, 239 A.3d 25 (Pa. 2020).

This Court's standard of review concerning a weight of the evidence claim is distinct from that of the trial court.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 168 (emphasis and citation omitted).

Our review of the trial court's decision is extremely limited when the challenge to the weight of the evidence is predicated on the credibility of trial testimony. *See id.* at 169. "[A]ppellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.* (citation omitted).

> Here, the trial court explained that

> During the presentation of the oral motion, as well in the 1925(b) statement, [Appellant] has failed to identify how the jury's verdict would shock one's sense of justice. Indeed, the evidence demonstrates that [Appellant] was aware law enforcement was engaged in an extensive and prolonged search for her son, [Appellant] was later found to have possession of her son in the back of her automobile under circumstances where she was not immediately turning her son over to law enforcement, [Appellant] took no steps to notify law enforcement that she had custody of [D.C.] and [D.C.] was only taken into custody as a result of law enforcement's intervention without any assistance from [Appellant]. When considering the uncontested facts, the guilty verdict does not shock the court's sense of justice.

- 14 -

Trial Ct. Op. at 2-3.

Following our review of the record, we discern no abuse of discretion in the trial court's ruling. **See Weir**, 201 A.3d at 167–68. Instantly, the jury was free to believe all, part or none of the evidence. Therefore, the jury could choose not to believe Appellant's explanation for D.C.'s presence in the vehicle on March 6, 2019. The jury could infer from the circumstantial and direct evidence presented at trial that the actions of Appellant in having D.C. driven from Bingham, New York constituted a taking accompanied by a physical act. On this record the trial court appropriately determined that the jury's verdict was not so contrary to the evidence as to require a new trial. For these reasons we conclude that the trial court did not abuse its discretion, and Appellant's challenge to the weight of the evidence merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/22/2021